# EXHIBIT
# 2

Electronically FILED by Superior Court of California, County of Los Angeles on 12/09/2022 02:37 PM Sherri R. Carter, Executive Officer/Clerk of Court, by E. Galicia,Deputy Clerk

Case 2:23-cv-00258   Document 1-2   Filed 01/13/23   Page 2 of 34   Page ID #:19

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Douglas Stern

**LINDEMANN LAW FIRM, APC**
Blake J. Lindemann, SBN 255747
Donna R. Dishbak, SBN 259311
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile: (310) 300-0267
E-mail: blake@lawbl.com

*Attorneys for Plaintiffs*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES - CENTRAL DISTRICT**

LINDEMANN LAW, APC, ROES 1-100,

                    Plaintiffs,

v.

RACKSPACE TECHNOLOGY, INC.; AND
DOES 1-100,

                    Defendants.

Case No.   22STCV38451

**COMPLAINT FOR DAMAGES FOR:**

1. **Intrusion Upon Seclusion**
2. **California Constitutional Right to Privacy**
3. **Violation of The California Confidentiality of Medical Information Act**
4. **Violation of The California Unfair Competition Law**
5. **Violation of The California Customer Records Act**
6. **Violation of The California Information Practices Act**
7. **Breach of Confidentiality**
8. **Invasion of Privacy**
9. **Constructive Fraud**
10. **Breach of Express Contract**
11. **Breach of Implied Contract**
12. **Unjust Enrichment**
13. **Declaratory Relief**
14. **Negligence/Gross Negligence/Negligence Per Se**
15. **California Consumer Privacy Act**

**[Demand for Jury Trial]**

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

1    Plaintiffs hereby file this complaint against RACKSPACE TECHNOLOGY, INC. and DOES

2    1-100 (collectively, the "Defendants"), and demanding a trial by jury, aver as follows:

3                        **JURISDICTION AND VENUE**

4        1.    This Court has personal jurisdiction over the Defendants as they regularly transact

5    business in this judicial district.

6        2.    Venue is proper in this judicial district because a substantial part of the events giving

7    rise to the causes of action occurred in this district.

8        3.    This case concerns a publicized security incident perpetrated by Defendants.[1]

9        4.    The security incident occurred in California at Rackspace Technology's San Jose data

10   center, which is located in San Jose, California.[2]  Plaintiff's data was located in Los Angeles and San

11   Jose, California.

12                             **THE PARTIES**

13       5.    Plaintiff Lindemann Law, APC is a Professional Corporation that is a citizen of

14   California.

15       6.    Plaintiff Blake J. Lindemann is an individual who is a citizen of California, fdba as

16   Lindemann Law Group.

17       7.    Defendant Rackspace Technology, Inc. is a publicly traded corporation, whose data

18   center is located in California.  The stock price has decreased 33% since as of the writing of this

19   Complaint since the breach was disclosed.

20       8.    Plaintiffs are ignorant of the true names and capacities of the Defendants DOES 1

21   through 100, inclusive, whether individual, corporate, associate, or otherwise, and therefore have

22   sued them by the foregoing names which are fictitious. Plaintiffs ask that when their true names and

23   capacities are discovered that this Complaint may be amended by inserting their true names and

24   capacities in lieu of said fictitious names, together with apt and proper words to charge them. All

25

26   _____

27   [1] https://www.bleepingcomputer.com/news/security/rackspace-confirms-outage-was-caused-by-ransomware-attack/.
     [2] https://www.rackspace.com/about/data-centers/san-

28   jose#:~:text=Rackspace%20Technology's%20San%20Jose%20data,the%20heart%20of%20Silicon%20Valley.

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

references to any named Defendants shall also refer to said Does. When the true names and capacities are ascertained, Plaintiffs will amend this Complaint accordingly. On information and belief, Plaintiffs allege that each of the fictitiously named defendants was responsible in some manner for the acts and omissions alleged herein and are liable to Plaintiffs herein.

9.     Said DOE defendants may include, but do not necessarily include, individuals, businesses, corporations, partnerships, associations, joint ventures, defendants that are government in nature, as well as product manufacturers, medical providers, professionals, contractors, estates, administrators of estates, trusts and/or all other types of entities and/or individuals as discovery in the matter may reveal. Regardless, Plaintiffs allege that each of the defendants designated herein as DOE is legally responsible in some manner for the events and happenings herein referred to, and legally caused injury and damages proximately thereby to Plaintiffs and each of them are alleged.

10.     Plaintiffs are informed and believe, and based thereon allege, that each of the defendants are the agent and/or employee of each and every other defendant, and in doing the things herein alleged, each defendant was acting in the course and scope of said agency and/or employment and that each of the acts of the defendants was ratified and confirmed by each and every other defendant.

11.     Plaintiffs are informed and believe, and based thereon allege, that each of the defendants designated as a DOE is in some manner responsible for the events and happenings herein referred to, and caused injury and damages proximately thereby to Plaintiffs as herein alleged.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.     Defendant Rackspace Technology, Inc.'s only functionality is to provide secure and accessible access to e-mails, contacts, calendars, and basic business functionalities. Instead, Defendants have failed to update the most basic security and anti-cyber attack functionalities leading to a massive data breach and exposure affecting Plaintiff and numerous businesses including without limitation.  In the aftermath, Rackspace's response has been shameful and the extent of the exposure was not disclosed; instead representatives were forced to lie to consumers and were told the full extent of the ransomware and exposure was not known. Not only are customers data exposed, but the use of the functionality and stored data has been impossible rendering the proper functionality of

business to be paralyzed and causing irreparable damage and potential reputational harm due to the interruption.

13.     Plaintiff has utilized Defendant for e-mail server and exchange server services from on or about 2008 to present date.

14.     In 2022, Plaintiff reported a security incident to Defendant that involved a Rackspace level infiltration and security breach to Defendant.  Defendant failed to properly investigate the issue.  On or about 9/5/22, there was a depreciation of non-secure protocols reflected in Plaintiff's customer interface.  Defendants' entire business is premised on "stopping" breaches before they start.

15.     As reported by Rackspace, Cloud company Rackspace is investigating a cybersecurity incident that forced it to shut down its Hosted Exchange environment. Rackspace's Hosted Exchange service, which makes it easier for organizations to use Microsoft Exchange servers for email, falsely claimed that it started experiencing problems on Friday, December 2. The company confirmed the problems early in the day and told customers that it had to shut down the Exchange environment due to what it described as "significant failure."

16.     On Saturday, nearly 24 hours after the disruption started, Rackspace revealed that the issues were caused by a "security incident".

17.     The incident may involve exploitation of known vulnerabilities affecting Microsoft Exchange, specifically CVE-2022-41040 and CVE-2022-41082, which are known as ProxyNotShell.

18.     ProxyNotShell came to light in late September after a Vietnamese cybersecurity company saw it being exploited in attacks.  Microsoft confirmed exploitation and linked the attacks to a nation-state hacker group. The tech giant rushed to share mitigations, but experts showed that they could be easily bypassed. However, Microsoft only released patches in November. Beaumont noticed that a Rackspace Exchange server cluster that is currently offline was running a build number from August 2022 a few days ago. Considering that the ProxyNotShell vulnerabilities were only fixed in November, it's possible that threat actors exploited the flaws to breach Rackspace servers.

"Although the vulnerability needs authentication, the exploits work without multi-factor authentication as Exchange Server doesn't yet support Modern Authentication at all, as

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

Microsoft deprioritised the implementation work," Beaumont explained in a blog post. He added, "If you are an MSP running a shared cluster, such as Hosted Exchange, it means that one compromised account on one customer will compromise the entire hosted cluster. This is high risk."

19. Defendants have failed to update the proxy server as required by well-known protocols.

20. Defendants have outsourced its main IT functionalities to India and other cross international domains that were unsafe and compromised Plaintiff's information.

21. This scenario has caused chaos and disruption to over ten thousand small businesses. Twitter users have been sharing the following:

Nick Cioromski @NCioromski:

"How is the **@Rackspace** outage not trending? This email outage is having a catastrophic impact on small businesses all over the world and there is seemingly no end in sight. @CBSNews @FoxNews @CNN @NBCNews @ABC @WSJbusiness @CNBC"

Scott Heselmeyer @DSHeselmeyer:

"The #rackspace failure had my law firm completely shut down for 80+ hours and nearly 2 full business days. We're up and running again and working on recovering data (luckily all of my e-mails are archived locally). Needless to say, we'll no longer be customers."

Sharon Jones @azsharin:

"Okay, Rackspace, this is ridiculous. I'm a small business owner unable to access my email. I have tried to reach you for an update. I finally received a call back with the "racker" laughing he had 400 more calls to return. He had absolutely no explanation. This is ridiculous."

22. Specifically, Plaintiffs' personal and private financial, personal, corporate, identifying, and other information has been compromised and cannot be used. Years of e-mails may have been lost, are currently inaccessible and the proposed solutions do not fix any of the problems.

23. Customers have been on hold for over 4 hours (if they can get through at all).

24. The user agreement in place does not include any arbitration provision.

25. Plaintiffs are customers of Defendants who entrusted their personally identifiable information ("PII") and private health information ("PHI") (together, "PII/PHI") to Defendants.

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

5

Defendants betrayed Plaintiffs trust by failing to properly safeguard and protect their PII/PHI, and publicly disclosing their PII/PHI without authorization, in violation of numerous laws, including, *inter alia*, the California Confidentiality of Medical Information Act ("CMIA") (Cal. Civ. Code § 56, *et seq*.), California Customer Records Act ("CRA") (Cal. Civ. Code § 1798.80, *et seq*.), California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, *et seq*.), California Information Practices Act ("IPA") (Cal. Civ. Code § 1798, *et seq*.), and California common law.

26.     The wrongfully disclosed and viewed PII/PHI, included, *inter alia*, Plaintiffs' Social Security number, business records, personal information, addresses, dates of birth, telephone numbers, personal addresses, and personal medical information.

27.     Defendants' wrongful actions, inaction, and omissions directly and proximately caused the Data Breach and the wrongful release and viewing of Plaintiffs' PII/PHI to the world.

28.     Plaintiffs are concerned about their clients, finances, credit, identities, medical records, and PII/PHI and, as such, regularly monitors their credit, monitor their financial accounts and/or carefully store and dispose of their PII/PHI and other documents containing their PII/PHI. The concern is reasonable and justified. Because of the Data Breach, there is an immediate and substantial risk of identity theft, identity fraud, medical fraud, lost medical identities and records, fraudulent credit card activity, the opening or re-opening of new credit card accounts in their name, phishing, increased mailers marketing products and services including, inter alia, medical products, medical services and prescription drugs specifically targeted to their medical conditions/Plaintiff has standing to bring this suit because as a direct and proximate result of Defendants' wrongful actions, inaction and omissions, and the resulting Data Breach, Plaintiffs have suffered (and will continue to suffer) economic damages and other injury and harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and medical fraud - risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of her PII/PHI, (iv) statutory damages under the California CMIA, (v) deprivation of the value of their PII/PHI, for which there is a well-established national and international market, and (vi) the financial and temporal cost of monitoring Plaintiffs' credit, monitoring their financial accounts.

29.     At present, the damages have not fully developed because Defendants have not disclosed their actions, but are currently no more than $70,000.

30.     Plaintiffs also demand an immediate restoration of their data and injunctive relief, which has been deprived.

**Defendants Failed to Comply with Regulatory Guidance and Meet Consumers' Expectations**

31.     Federal agencies have issued recommendations and guidelines to temper data breaches and the resulting harm to individuals and financial institutions. For example, the FTC has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

32.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.  Among other things, the guidelines note businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

33.     Additionally, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

34.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

35.     In this case, Defendants were fully aware of their obligation to use reasonable measures to protect the PII of Plaintiffs, acknowledging as much in its own privacy policies. But despite understanding the consequences of inadequate data security, Defendants failed to comply with industry standard data security requirements.

36.     Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 and various state consumer protection and data breach statutes.

**Effect of the Data Breach**

37.     Defendants' failure to keep Plaintiffs' PII secure has severe ramifications. Given the sensitive nature of the PII stolen in the Data Breach, cyber criminals have the ability to commit identity theft and other identity-related fraud against Plaintiffs now and into the indefinite future.

38.     The information stolen from Defendants included usernames and passwords—PII that is highly valued among cyber thieves and criminals on the Dark Web. For example, Apple ID usernames and passwords were sold on average for $15.39 each on the Dark Web, making them the most valuable non-financial credentials for sale on that marketplace. Usernames and passwords for eBay ($12), Amazon (≤$10), and Walmart (≤$10) fetch similar amounts. Consumers often reuse passwords. By unlawfully obtaining this information, cyber criminals can use these credentials to access other services beyond that which was hacked.

39.     Other information stored on Defendants' databases that were compromised in the Data Breach can fetch far more on the Dark Web.  Stolen medical records "can fetch up to $350 on the dark web."

40.     PII also has significant monetary value in part because criminals continue their efforts to obtain this data.  In other words, if any additional breach of sensitive data did not have incremental value to criminals, one would expect to see a reduction in criminal efforts to obtain such additional data over time. Instead, just the opposite has occurred.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

41.     The value of PII is key to unlocking many parts of the financial sector for consumers. Whether someone can obtain a mortgage, credit card, business loan, tax return, or even apply for a job depends on the integrity of their PII. Similarly, the businesses that request (or require) consumers to share their PII as part of a commercial transaction do so with the expectation that its integrity has not been compromised.

42.     Annual monetary losses for victims of identity theft are in the billions of dollars. In 2017, fraudsters stole $16.8 billion from consumers in the United States, which includes $5.1 billion stolen through bank account take-overs.

43.     The annual cost of identity theft is even higher. McAfee and the Center for Strategic and International Studies estimates that the likely annual cost to the global economy from cybercrime is $445 billion a year.

44.     Over 1 million minor children were victims of fraud or identity theft in 2017, and two/thirds of those victims were under the age of seven.

45.     Data thieves are also more likely to target minors' PII and to use that PII once it is stolen. In 2017, "[a]mong notified breach victims . . . 39 percent of minors became victims of fraud, versus 19 percent of adults."

46.     Criminals make use of minors' PII to open accounts or new lines of credit that may not be noticed by the minor; and to create "synthetic identities" using a combination of real and fictitious information which again, the minor may not realize was stolen.  Because minors do not regularly monitor their bank accounts (if they have them) or their credit reports, data thieves are more likely to make unrestricted use of this information for longer periods of time than they would for adult victims.

47.     Minors also generally are less likely to receive notice from the company responsible for the data breach or to even realize that a thief has made fraudulent use of their information in other ways – such as creating a new identity for the purposes of accessing government benefits, healthcare, or employment.  Minors often "won't find out that their identity has been stolen until they apply for their first credit card or college loan."

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

48.     Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, in addition to the irreparable damage that may result from the theft of PII, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.

49.     Even before the occurrence of identity theft, victims may spend valuable time and suffer from the emotional toll of a data breach. Here, Plaintiff Gupta has already spent approximately two hours investigating the Data Breach after receiving notice from ABC, including independent online research regarding the scope of the breach and communicating with ABC regarding the breach.  Plaintiffs will continue to expend time monitoring credit and other identity-related information.

50.     The impact of identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that respondents to their surveys in 2013-2016 described that the identity theft they experienced affected their ability to get credit cards and obtain loans, such as student loans or mortgages.  For some victims, this could mean the difference between going to college or not, becoming a homeowner or not, or having to take out a high interest payday loan versus a lower-interest loan.

51.     It is no wonder, then, that identity theft exacts a severe emotional toll on its victims. The 2017 Identity Theft Resource Center survey evidences the emotional suffering experienced by victims of identity theft:

- 75% of respondents reported feeling severely distressed;

- 67% reported anxiety;

- 66% reported feelings of fear related to personal financial safety;

- 37% reported fearing for the financial safety of family members;

- 24% reported fear for their physical safety;

- 15.2% reported a relationship ended or was severely and negatively

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

10

○ impacted by the identity theft; and

• 7% reported feeling suicidal.

52. Identity theft can also exact a physical toll on its victims. The same survey reported that respondents experienced physical symptoms stemming from their experience with identity theft:

• 48.3% of respondents reported sleep disturbances;

• 37.1% reported an inability to concentrate / lack of focus;

• 28.7% reported they were unable to go to work because of physical symptoms;

• 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues); and

• 12.6% reported a start or relapse into unhealthy or addictive behaviors.

53. There may also be a significant time lag between when PII is stolen and when it is actually misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

54. The risk of identity theft is particularly acute where detailed personal information is stolen, such as the PII that was compromised in the Data Breach.

55. As the result of the Data Breach, Plaintiffs have suffered or will suffer economic loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a. identity theft and fraud resulting from theft of their PII;

b. costs associated with the detection and prevention of identity theft and unauthorized use of their online accounts, including financial accounts;

c. losing the inherent value of their PII;

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

11

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

d.  losing the value of Defendants' explicit and implicit promises of adequate data security;

e.  costs associated with purchasing credit monitoring and identity theft protection services;

f.  unauthorized access to and misuse of their online accounts;

g.  unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans,  late charges and fees, and adverse effects on their credit;

h.  lowered credit scores resulting from credit inquiries following fraudulent  activities;

i.  costs associated with time spent and the loss of productivity or enjoyment  of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, addressing other varied instances of identity theft – such as credit cards, bank accounts, loans, government benefits, and other services procured using the stolen PII, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, updating login information for online accounts sharing the same login credentials as were compromised in the Data Breach, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach;

j.  the continued imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being in the possession of one or more unauthorized third parties; and

k.  continued risk of exposure to hackers and thieves of their PII, which remains in Defendants' possession and is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect Plaintiffs.

56.     Additionally, Plaintiffs place significant value in data security. According to a recent survey conducted by cyber-security company FireEye, approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less personal information to organizations that suffered a data breach.

57.     The cost of hosting or processing consumers', parents', and guardians PII on or through Defendants' databases and systems includes things such as the actual cost of the servers and employee hours needed to process said transactions. One component of the cost of using these services is the explicit and implicit promises Defendants made to protect consumers', parents', and guardians' PII. Because of the value consumers and their parents and guardians place on data privacy and security, companies with robust data security practices can command higher prices than those who do not. Indeed, if consumers, parents, guardians, and school districts did not value their data security and privacy, companies like Defendants would have no reason to tout their data security efforts to their actual and potential customers.

58.     Had the victims of the Data Breach including Plaintiffs known the truth about Defendants' data security practices - that Defendants would not adequately protect and store their data—they would have demanded that their school districts not store their PII on Defendants' databases or process it through Defendants' systems.

59.     Plaintiffs are at an imminent risk of fraud, criminal misuse of their PII, and identity theft for years to come as result of the data breach and Defendants' deceptive and unconscionable conduct.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Intrusion Upon Seclusion**

**(Brought on Behalf of Plaintiffs)**

60.     Plaintiffs repeat and reallege all preceding paragraphs contained herein.

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

61. California adheres to Restatement (Second) of Torts, § 652B with no material variation.

62. "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts, § 652B.

63. Plaintiffs have reasonable expectations of privacy in their records and PII.

64. The reasonableness of such expectations of privacy is supported by Defendants' unique position to store Plaintiffs' business and personal data.

65. Defendants intentionally intruded on and into Plaintiffs' solitude, seclusion, or private affairs by constructing an inadequate system to store data of consumers and their parents.

66. These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, countless consumer surveys, studies, and op-eds decrying the data breach and tracking of children, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

67. Defendants' intrusion into the sacrosanct relationship between parent and child and subsequent exploitation of children's special vulnerabilities online through lax data and cybersecurity practices contributes to the highly offensive nature of Defendants' activities.

68. Plaintiffs were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

69. Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs.

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

14

70.     As a result of Defendants' actions, Plaintiffs seek injunctive relief, in the form of Defendants' cessation of tracking practices in violation of state law, and restoring access to Plaintiffs data.

71.     As a result of Defendants' actions, Plaintiffs seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs seek punitive damages because Defendants' actions—which were malicious, oppressive, willful—were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

72.     Plaintiffs seek restitution for the unjust enrichment obtained by Defendants' as a result of the Data Breach.

## SECOND CAUSE OF ACTION

### California Constitutional Right to Privacy

### (Brought on Behalf of Plaintiffs)

73.     Plaintiffs repeat and reallege all preceding paragraphs contained herein.

74.     Plaintiffs have reasonable expectations of privacy in their files with the school.

75.     Defendants recklessly intruded on and into Plaintiffs' solitude, seclusion, right of privacy, or private affairs by intentionally designing the computer systems and databases in a manner subject to, and vulnerable to a cybersecurity attack.

76.     These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential information about children, constituting an egregious breach of social norms. This is evidenced by, *inter alia*, countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs'' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

15

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

77.     Defendants' intrusion into the sacred relationship between parent and child and subsequent exploitation of children's special vulnerabilities online also contributes to the highly offensive nature of Defendants' activities.

78.     Plaintiffs were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

79.     Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs.

80.     As a result of Defendants' actions, Plaintiffs seek injunctive relief, in the form of Defendants' restoration of all data. As a result of Defendants' actions, Plaintiffs seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs seek punitive damages because Defendants' actions - which were malicious, oppressive, willful - were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT

### (Cal. Civ. Code § 56, *et seq.*)

### (On Behalf of Plaintiffs against all Defendants and DOES 1-100)

81.     The preceding factual statements and allegations are incorporated by reference.

82.     Section 56.10(a) of the California Civil Code (CMIA) provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization."

83.     At all relevant times, Defendants were contractors and/or health care providers because they had the "purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis or treatment of the individual." Cal. Civ. Code § 56.06(a).

84.     At all relevant times. Defendants collected, stored, managed, and transmitted Plaintiffs' PII/PHI.

85.     The CMIA requires Defendants to implement and maintain standards of confidentiality with respect to all individually identifiable PHI disclosed to them, and maintained by them. Specifically, California Civil Code § 56.10(a) prohibits Defendants from disclosing Plaintiffs' PHI without first obtaining their authorization to do so.

86.     Section 56.11 of the California Civil Code specifies the manner in which authorization must be obtained before PHI is released. Defendants, however, failed to obtain let alone, proper authorization - from Plaintiffs before causing the systems to be exposed and subject to data breach. Defendants also failed to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs' PHI as required by California law. As a direct and proximate result of Defendants' wrongful actions, inaction, omissions, and want of ordinary care, Plaintiffs' PHI was disclosed. By disclosing Plaintiffs' PHI without their written authorization. Defendants violated California Civil Code § 56, *et seq*., and their legal duty to protect the confidentiality of such information.

87.     Defendants also violated Sections 56.06 and 56.101 of the California CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential PHI. As a direct and proximate result of Defendants' wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs' confidential PHI was viewed, released and disclosed without their authorization by unauthorized persons.

88.     As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, and violation of the CMIA, Plaintiffs have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and medical fraud - risks justifying expenditures for protective and remedial services for which she is entitled to compensation, (ii)

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

invasion of privacy, (iii) breach of the confidentiality of her PII/PHI, (iv) statutory damages under the California CMIA, (v) deprivation of the value of her PII/PHI, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring her credit, monitoring their financial accounts, and mitigating Plaintiffs' damage and inconvenience damages.

89.     As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violation of the CMIA, Plaintiffs also are entitled to (i) injunctive relief, (ii) punitive damages of up to $3,000 per Plaintiffs, and (iii) attorneys' fees, litigation expenses and court costs under California Civil Code § 56.35.

## **FOURTH CAUSE OF ACTION**

### **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**

### **(Cal. Bus. & Prof. Code § 17200, et seq.)**

### **(On Behalf of Plaintiffs against all Defendants and DOES 1-100)**

90.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

91.     The California Unfair Competition Law, Cal Bus. & Prof. Code § 17200, *et seq.*, prohibits any "unlawful, fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law. By virtue of their above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendants engaged in unlawful, unfair, and fraudulent practices within the meaning, and in violation of, the UCL.

92.     In the course of conducting its business. Defendants committed "unlawful business practices by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs' PII/PHI, and violating the statutory and common law alleged herein in the process, including, *inter alia*, the California CMIA, the California CRA, and the California IPA. Plaintiffs reserve the right to allege

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

other violations of law by Defendants constituting other unlawful business acts or practices. Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

93.     Defendants also violated the UCL by failing to timely notify Plaintiffs regarding the unauthorized release (and/or threats of unauthorized release) and disclosure of their PII/PHI. If Plaintiffs had been notified in an appropriate fashion, they could have taken precautions to safeguard and protect their PII/PHI, medical information, and identities.

94.     Defendants' above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair business acts and practices" in violation of the UCL in that Defendants' wrongful conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendants' wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendants' legitimate business interests other than engaging in the above-described wrongful conduct.

95.     The UCL also prohibits any "fraudulent business act or practice." Defendants' above-described claims, nondisclosures and misleading statements were false, misleading and likely to deceive the consuming public in violation of the UCL.

96.     As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and their violations of the UCL, Plaintiffs have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, risks justifying expenditures for protective and remedial identity fraud and medical fraud services for which she is entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of her PII/PHI, (iv) statutory damages under the California CMIA, (v) deprivation of the value of her PII/PHI, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring her credit, monitoring her financial accounts, and mitigating her damages.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

97.     Unless restrained and enjoined, Defendants will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiffs, also seeks restitution and an injunction prohibiting Defendants from continuing such wrongful conduct, and requiring Defendants to modify their corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the PII/PHI entrusted to them, as well as all other relief the Court deems appropriate, consistent with Cal. Bus. & Prof. Code § 17203.  In addition, Plaintiffs demand immediate restoration to their data.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT

### (Cal. Civ. Code § 1798.80, *et seq.*)

### (On Behalf of Plaintiffs against all Defendants and DOES 1-100)

98.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

99.     To ensure that personal information about California residents is protected, the California Legislature enacted the Customer Records Act, California Civil Code § 1798.81.5, which requires that any business that "owns licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

100.    As described above. Defendants failed to implement and maintain reasonable security procedures and practices to protect the Plaintiffs' PII/PHI, and thereby violated the California Customer Records Act.

101.    Under California Civil Code § 1798.82, any business that obtains and retains PII/PHI must promptly and "in the most expedient time possible and without unreasonable delay" disclose any Data Breach involving such retained data.

102.    By its above-described wrongful actions, inaction, omissions, and want of ordinary care. Defendants failed to design, adopt, implement, control, direct, oversee, manage, monitor and

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs' PII/PHI.

103.    Defendants also unreasonably delayed and failed to disclose the Data Breach (and threat of the data breach) to Plaintiffs in the most expedient time possible and without unreasonable delay when they knew, or reasonably believed, Plaintiffs' PII/PHI had been wrongfully disclosed to an unauthorized person or persons.

104.    As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the California CRA, Plaintiffs have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and medical fraud - risks Justifying expenditures for protective and remedial services for which she is entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of her PII/PHI, (iv) statutory damages under the California CMIA, (v) deprivation of the value of her PII/PHI, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring her credit, monitoring her financial accounts, and mitigating her damages.

105.    Plaintiff is also entitled to injunctive relief under California Civil Code Section 1798.84(e).

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA INFORMATION PRACTICES ACT

### (Cal. Civ. Code §§ 1798, *et seq.*)

### (On Behalf of Plaintiffs against all Defendants and DOES 1-100)

106.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

107.     Pursuant to the California Information Practices Act of 1977, California Civil Code § 1798.21, an agency is required "to establish appropriate and reasonable administrative, technical, and physical safeguards to ensure compliance with provisions of this chapter, to ensure the security

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

and confidentiality of records, and to protect against anticipated threats or hazards to their security or integrity which could result in any injury."

108. As described above. Defendants failed to implement and maintain reasonable security procedures and practices to protect the Plaintiffs' PII/PHI, and thereby violated the California IPA.

109. Under California Civil Code § 1798.29, any agency that obtains and retains PII/PHI must promptly and "in the most expedient time possible and without unreasonable delay" disclose any Data Breach involving such retained data.

110. By its above-described wrongful actions, inaction, omissions, and want of ordinary care. Defendants failed to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs PII/PHI.

111. Defendants also unreasonably delayed and failed to disclose the Data Breach to Plaintiffs in the most expedient time possible and without unreasonable delay when they knew, or reasonably believed. Plaintiffs' PII/PHI had been wrongfully disclosed to an unauthorized person or persons.

**SEVENTH CAUSE OF ACTION**

**BREACH OF CONFIDENTIALITY**

**(On Behalf of Plaintiffs against all Defendants and DOES 1-100)**

112. Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

113. Plaintiffs' unique, personal, and private PII/PHI in Defendants' possession, custody, and control was (and continues to be) highly confidential.

114. Defendants breached the confidentiality of Plaintiffs' PII/PHI by failing to identify, implement, maintain and monitor appropriate data security measures, policies, procedures, protocols, and/ software and hardware systems to ensure the security and confidentiality of Plaintiffs' PII/PHI, and wrongfully releasing and disclosing their PII/PHI without authorization, as described above.

115. Had Defendants not engaged in the above-described wrongful actions, inaction and omissions, the Data Breach never would have occurred and Plaintiffs' PII/PHI would not have been

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

wrongfully released, disclosed, compromised, disseminated to the world, and wrongfully used. Defendants' wrongful conduct constitutes (and continues to constitute) the tort of breach of confidentiality at California common law.

116.    As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and medical fraud - risks justifying expenditures for protective and remedial services for which she is entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of her PII/PHI, (iv) statutory damages under the California CMIA, (v) deprivation of the value of her PII/PHI, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring her credit, monitoring her financial accounts, and mitigating her damages.

## EIGHTH CAUSE OF ACTION

### INVASION OF PRIVACY

### (On Behalf of Plaintiffs against all Defendants and DOES 1-100)

117.    Defendants invaded Plaintiffs Members' right to privacy by allowing the unauthorized access to the information of Plaintiffs and negligently maintaining the confidentiality of the information of Plaintiffs, as set forth above. The intrusion was offensive and objectionable to Plaintiff, and to a reasonable person of ordinary sensibilities in that the personal medical information that

118.    Defendants obtained was disclosed by Defendants without prior written authorization of Plaintiffs.

119.    The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiffs' personal medical information provided to Defendants as patients of Defendants were made privately, and was intended to be kept confidential and protected from unauthorized disclosure.

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

120.    As a proximate result of Defendants' above acts, Plaintiffs' PII/PHI was viewed, printed, distributed, and used by persons without prior written authorization and Plaintiffs suffered general damages in an amount to be determined at trial according to proof Defendants are liable for oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiffs' personal medical information with a willful and conscious disregard of Plaintiffs' right to privacy.

121.    Unless and until enjoined, and restrained by order this Court, Defendants' wrongful conduct will continue to cause Plaintiffs great and irreparable injury in that the PII/PHI maintained by Defendant can be viewed, printed, distributed, and used by unauthorized persons. Plaintiffs have no adequate remedy of law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiffs.

### NINTH CAUSE OF ACTION

### CONSTRUCTIVE FRAUD

**(On Behalf of Plaintiffs against all Defendants and DOES 1-100)**

122.    The preceding factual statements and allegations are incorporated by reference.

123.    Defendants, in collecting Plaintiffs' nonpublic, personal, financial, and health information, were therefore entrusted with Plaintiffs' nonpublic personal, financial, and health information and were put in the same confidential and special relationship with Plaintiffs as they had with the companies that provided them with health insurance.

124.    Defendants breached their confidential and special relationship with Plaintiffs by failing to adequately secure Plaintiffs' nonpublic personal and financial information from unauthorized users, including cyber thieves who stole the information as described herein.

125.    As a direct and proximate result of Defendants' breach, Plaintiffs have been harmed and have suffered, and will continue to suffer, damages and injuries.

### TENTH CAUSE OF ACTION

### BREACH OF EXPRESS CONTRACT

**(On Behalf of Plaintiffs against all Defendants and DOES 1-100)**

126.    The preceding factual statements and allegations are incorporated by reference.

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

24

127.    Plaintiffs, upon information and belief entered into express contracts with Defendants that include Defendants' promise to protect nonpublic personal information given to Defendants or that Defendants gather on their own, from disclosure. Defendants' promise was incorporated into each of the privacy policies, student manuals, and other enrollment documents issued to Plaintiffs.

128.    Plaintiffs performed their obligations under the contracts when they signed up for education and health services.

129.    Defendants breached their contractual obligation to protect the nonpublic personal information Defendants gathered when the information was accessed by unauthorized personnel as part of the cyber hacking Incident that occurred in 2022.

130.    As a direct and proximate result of the Data Breach, Plaintiffs have been harmed and have suffered, and will continue to suffer, damages and injuries.

**ELEVENTH CAUSE OF ACTION**

**BREACH OF IMPLIED CONTRACT**

**(On Behalf of Plaintiffs against all Defendants and DOES 1-100)**

131.    Defendants provided Plaintiffs with an implied contract to protect and keep Plaintiffs' private nonpublic personal, educational, financial and health information when they gathered the information from each of their consumers.

132.    Plaintiffs would not have provided their personal or financial and health information to Defendants or their subsidiaries, but for Defendants' implied promises to safeguard and protect Defendants' consumers' nonpublic personal and financial information.

133.    Plaintiffs performed their obligations under the implied contract when they provided their private personal, educational, financial, and health information as consumers and were furnished with the services provided by Defendants.

134.    Defendants breached the implied contracts with Plaintiffs by failing to protect and keep private the nonpublic personal and financial information provided to them about Plaintiffs.

135.    As a direct and proximate result of Defendants' breach of their implied contracts, Plaintiffs have been harmed and have suffered, and will continue to suffer, damages and injuries.

**TWELFTH CAUSE OF ACTION**

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

25

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

**UNJUST ENRICHMENT**

**(On Behalf of Plaintiffs against all Defendants and DOES 1-100)**

136.     The preceding factual statements and allegations are incorporated by reference.

137.     Plaintiffs conferred a benefit to Defendants in the form of payment taxes for public education.

138.     Defendants failed to pay for the benefits provided to them by Plaintiffs by failing to protect and keep private the nonpublic personal financial, educational, and health information with which Plaintiffs entrusted Defendants with.

139.     Defendants' failure to pay for the benefits provided to them, *i.e.*, to protect and keep private Plaintiffs' nonpublic personal, financial and health information, was to the detriment of Plaintiffs because it was Plaintiffs' nonpublic personal, financial, and health information that was taken by cyber thieves.

140.     As a direct and proximate result of Defendants' failure to pay for the benefits provided to them, Plaintiffs have been harmed and have suffered, and will continue to suffer, damages and injuries, and are entitled to restitution.

**THIRTEENTH CAUSE OF ACTION**

**DECLARATORY RELIEF**

**(On Behalf of Plaintiffs against all Defendants and DOES 1-100)**

141.     The preceding factual statements and allegations are incorporated by reference. An actual controversy has arisen in the wake of the data breach regarding Defendants' duties to safeguard and protect Plaintiffs' confidential and sensitive PII/PHI. Defendants' PII/PHI security measures were (and continue to be) woefully inadequate. Defendants dispute these contentions and contend that their security measures are appropriate.

142.     Plaintiffs continue to suffer damages, other injury or harm as additional identity theft and identity fraud occurs.

143.     Therefore, Plaintiffs request a judicial determination of their rights and duties, to ask the Court to enter a judgment declaring, *inter alia*, (i) Defendants owed (and continue to owe) a legal duty to safeguard and protect Plaintiffs' confidential and sensitive PII/PHI, and timely notify them

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

about the data breach, (ii) Defendants breached (and continue to breach) such legal duties by failing to safeguard and protect Plaintiffs' confidential and sensitive PII/PHI, and (iii) Defendants' breach of their legal duties directly and proximately caused the data breach, and the resulting damages, injury, or harm suffered by Plaintiffs. A declaration from the court ordering the Defendants to stop their illegal practices is required.

144.    The preceding factual statements and allegations are incorporated by reference.

**FOURTEENTH CAUSE OF ACTION**

**NEGLIGENCE/GROSS NEGLIGENCE/NEGLIGENCE PER SE**

**(On Behalf of Plaintiffs against all Defendants and DOES 1-100)**

145.    The preceding factual statements and allegations are incorporated by reference.

146.    Defendants, in offering cloud services, knew that Plaintiffs' sensitive PII and data would be stored or processed by Defendants' systems and databases, including in Defendants Hosting.

147.    By collecting, storing, and using this data, Defendants had a duty of care to Plaintiffs to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting this PII in Defendants' possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Defendants' security systems and data storage architecture to ensure that Plaintiffs' PII was adequately secured and protected; (b) implementing processes that would detect an unauthorized breach of Defendants' security systems and data storage architecture in a timely manner; (c) timely acting on all warnings and alerts, including public information, regarding Defendants' security vulnerabilities and potential compromise of the PII of Plaintiffs; (d) maintaining data security measures consistent with industry standards and applicable state and federal law; and (e) timely and adequately informing Plaintiffs if and when a data breach occurred notwithstanding undertaking (a) through (d) above.

148.    Defendants had common law duties to prevent foreseeable harm to Plaintiffs. These duties existed because Plaintiffs were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiffs would be harmed by the failure

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, Defendants knew that it was more likely than not Plaintiffs would be harmed by such theft.

149.    Defendants had a duty to monitor, supervise, control, or otherwise provide oversight to safeguard the PII that was collected, stored, and processed by Defendants computer systems.

150.    Defendants' duties to use reasonable security measures also arose as a result of the special relationship that existed between Defendants, on the one hand, and Plaintiffs, on the other hand. The special relationship arose because Plaintiffs entrusted Defendants with their PII by virtue of their participation in all aspects of school life. Defendants alone could have ensured that its security systems and data storage architecture were sufficient to prevent or minimize the Data Breach.

151.    Defendants' duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII. Various FTC publications and data security breach orders further form the basis of Defendants' duties. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.[3]

152.    Defendants knew or should have known that their computer systems and data storage architecture were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing confidential PII and business data.

153.    Defendants knew or should have known that a breach of their systems and data storage architecture would inflict damages upon Plaintiffs, and Defendants was therefore charged with a duty to adequately protect this critically sensitive information.

154.    Defendants breached the duties it owed to Plaintiffs described above.  Defendants breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiffs; (b) detect

---

[3] While the FTC Act is referred to herein, none of the causes of action rely on any Federal Cause of action, but rely exclusively on California causes of action.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

the breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

155.    Defendants also failed to exercise reasonable care when it falsely conveyed information to its customer and apprise them of details.

156.    But for Defendants' wrongful and negligent breach of its duties owed to Plaintiffs, Plaintiffs' PII would not have been compromised.

157.    As a direct and proximate result of Defendants' negligence, Plaintiffs have been injured and are entitled to damages in an amount to be proven at trial but no more than $70,000 at present. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by Defendants, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

## FIFTEENTH CAUSE OF ACTION

### CALIFORNIA CONSUMER PRIVACY ACT

### Cal. Civ. Code §§ 1798.100 *et seq.*

### (On Behalf of Plaintiffs against all Defendants and DOES 1-100)

158.    The preceding factual statements and allegations are incorporated by reference.

159.    Plaintiffs are "consumer[s]" as that term is defined in Cal. Civ. Code. § 1798.140(g). Rackspace is considered a "business" as that term is defined in Cal. Civ. Code. § 1798.140(c).

160.    Plaintiffs' PII is "nonencrypted and nonredacted personal information" as that term is used in Cal. Civ. Code § 1798.150(a)(1). The Data Breach constitutes "an unauthorized access and exfiltration, theft, or disclosure" pursuant to Cal. Civ. Code § 1798.150(a)(1).

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

29

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

161.    Defendants had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the Plaintiffs to protect said PII.

162.    Defendants breached the duty they owed to Plaintiffs described above by among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiffs; (b) detect the breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

163.    Defendants' breach of the duty they owed to Plaintiffs described above was the direct and proximate cause of the Data Breach. As a result, Plaintiffs members suffered damages, as described above and as will be proven at trial.

164.    Plaintiffs seek injunctive relief in the form of an order enjoining Defendants from continuing the practices that constituted their breach of the duty owed to Plaintiffs as described above, and to restoring the data belonging to Plaintiffs. Concurrently with the filing of this Complaint, Plaintiffs are serving a letter of notice on Rackspace pursuant to Cal. Civ. Code § 1798.150(b) and anticipate amending this Complaint to seek statutory damages upon receipt of a written statement from Rackspace in response to that letter of notice.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

1) For injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs, including but not limited to an order:

   a) Restoring and returning Plaintiffs' data to them;

   b) Prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

   c) Requiring Defendants to protect, including through adequate encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

   d) Requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' PII;

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

e) Requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

f) Requiring Defendants to audit, test, and train its personnel regarding any new or modified procedures;

g) Requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

h) Requiring Defendants to conduct regular database scanning and security checks;

i) Requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiffs;

j) Requiring Defendants to routinely and continually conduct internal training and education, at least annually, to inform security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

k) Requiring Defendants to implement, maintain, regularly review, and revise as necessary, a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

l) Requiring Defendants to meaningfully educate consumers about the threats they face as a result of the loss of their PII to third parties, as well as the steps affected individuals must take to protect themselves;

m) Requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from its servers, as well as programs sufficient to protect infiltration of school districts' local servers connected to Defendants' systems; and

n) Requiring Defendants to provide ten years of identity theft and fraud protection services to Plaintiffs.

2) For an award of compensatory, consequential, and general damages, including nominal

damages, as allowed by law in an amount to be determined but no more than $70,000 (until more information is known about the extent of the "security incident");

3)   For an award of statutory damages and punitive damages, as allowed by law in an amount to be determined, but such damages collectively, of no more than $70,000;

4)   For an award of restitution or disgorgement of amounts paid to Rackspace, in an amount to be determined;

5)   For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

6)   For prejudgment interest on all amounts awarded; and

7)   Such other and further relief as the Court may deem just and proper.

Dated:   <u>December 9, 2022</u>                    Respectfully submitted,

By: _____

Blake J. Lindemann
California Bar No. 255747
E-mail:  blake@lawbl.com
Donna R. Dishbak
California Bar No. 259311
E-mail:  donna@lawbl.com
**LINDEMANN LAW FIRM, APC**
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone No: 310-279-5269
Facsimile No: 310-300-0267

*Attorneys for Plaintiffs*

LINDEMANN LAW FIRM, APC
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Dated:   December 9, 2022                    Respectfully submitted,

By: _____

Blake J. Lindemann
California Bar No. 255747
E-mail:  blake@lawbl.com
Donna R. Dishbak
California Bar No. 259311
E-mail:  donna@lawbl.com
**LINDEMANN LAW FIRM, APC**
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone No: 310-279-5269
Facsimile No: 310-300-0267

*Attorneys for Plaintiffs*

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES